IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

DANA MARIE ADAMS,           )
                            )
            Petitioner,     )
                            )
    v.                      )        CV 120-135
                            )
MEOSHA McMILLAN, Warden, [1] )
                            )
            Respondent.     )
        _____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
        _____

Petitioner, an inmate at Pulaski State Prison in Hawkinsville, Georgia, brings the above-captioned petition pursuant to 28 U.S.C. § 2254. Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Petitioner's § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.      BACKGROUND

Petitioner challenges her convictions for aggravated child molestation, child molestation, and contributing to the delinquency of a minor as determined at a March 2013 jury trial in the Superior Court of Richmond County, Georgia, whereat court-appointed counsel B. Michael Arrington represented Petitioner. Adams v. State, 795 S.E.2d 330 (Ga. Ct. App.

---

[1] According to the Georgia Department of Corrections website, as updated since the Court's September 25th Order, Meosha McMillan is the Warden of PSP. See www.dcor.state.ga.us. Therefore, pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the **CLERK** to update the docket consistent with this Order.

2014); (doc. no. 9-1, p. 1).   The trial court sentenced Petitioner to twenty-seven years of confinement followed by life on probation on the convictions for one count of aggravated child molestation, one count of child molestation, two counts of contributing to delinquency of a minor, and also two counts of contributing to the deprivation of a minor .  (Doc. no. 8, p. 2; doc. no. 9-5, pp. 62-65.)

Appointed attorney Russell Jones filed a motion for new trial, which, following a hearing, the trial court denied.  (Doc. no. 9-5, pp. 87-89, 133-34.)  Mr. Jones filed a direct appeal, raising three grounds for relief:

(1)     The evidence was insufficient to support convictions for contributing to the deprivation of a minor;

(2)     The evidence was insufficient to support convictions for aggravated child molestation and child molestation; and,

(3)     The trial court erred in allowing a 911 recording into evidence.

(Doc. no. 10-4, pp. 15-27.)

The Georgia Court of Appeals affirmed Petitioner's molestation and contribution to delinquency of a minor convictions but overturned the two convictions for contributing to the deprivation of a minor, concluding Petitioner's actions did not constitute deprivation of needs essential to the well-being of children under O.C.G.A. § 16-12-1(b).  Adams, 795 S.E.2d at 334.  The Georgia Court of Appeals provided the following description of the evidence:

. . . Adams has three children, K.R. and two children both with the initials R.A. and R.A.  At the time in question, K.R. was 12 years old and R.A. and R.A. were both under the age of five.  Adams also spent a fair bit of time with her nephews, including T.B.  In October 2011, T.B. and his cousin C.C.— both 13 years old— were spending the night at Adams's house.  Also present were Adams's three children and K.R.'s friend, J.M.  At some point, C.C. asked Adams if she would give him $20 for washing her camper so that he would have money to buy some

2

marijuana.  Adams not only agreed to give C.C. the money, she said she would drive him to get the marijuana after she put her youngest two children to bed.

> . . . .

> . . . After putting those children to bed, Adams drove C.C., T.B., K.R., and J.M. to a location 10-15 minutes away where they waited another 15-20 minutes for the marijuana dealer to arrive.  Adams, who had been drinking, backed into a fence and swerved all over the road during the drive.  After they returned to Adams's house, Adams and the two boys went into the camper where they were joined by Adams's friend, Karen Morris. The four smoked marijuana, and Adams drank alcohol, which she shared with C.C. Both C.C. and Morris described Adams as drunk.

> . . . .

> . . . Morris left around midnight and took J.M. and K.R. back to her house to sleep.  J.M. wanted to leave because Adams was drunk, and she was not sure what would happen.  T.B. also left the camper and returned to the house.  When Adams and C.C. were alone in the camper, Adams performed oral sex on C.C. and the two had intercourse.  They returned to the house, where C.C. told T.B. what he had been doing. T.B. fell asleep in the computer room, and C.C. joined Adams in K.R.'s bed, where the two again had intercourse.  K.R. returned home the next morning to get some clothes.  When she found the front door locked, she went to her bedroom window and saw two people in her bed.  Later that morning, C.C. and Adams went into Adams's bedroom where they again engaged in intercourse.

> . . . Adams drove C.C. home, and C.C.'s mother and her boyfriend both noticed a hickey on C.C.'s neck.  C.C. initially did not tell any adult about the night's events because he did not want Adams to get in trouble.  But the mother's boyfriend was suspicious and kept asking questions until C.C. finally told him what had happened.  C.C.'s parents were then told, and his father contacted law enforcement.

Id. at 331-32.

        August F. Siemon filed a state habeas corpus petition on July 7, 2017, in the Superior

Court of Pulaski County, raising the following grounds for relief.

> (1)    Petitioner received ineffective assistance of both trial and appellate counsel. Specifically, during Petitioner's trial hearsay statements were

3

made by the State's critical witness.  Trial counsel failed to object to this testimony and appellate counsel failed to raise the issue.

(2)   Petitioner received ineffective assistance of both trial and appellate counsel.  Specifically, the improper hearsay statements in Ground One constituted improper bolstering of the critical witness.  Trial counsel failed to make a proper objection and appellate counsel failed to raise this meritorious issue on appeal.

(Doc. no. 9-3.)

At trial, K.R. testified for the prosecution and, with respect to peering in her bedroom window and seeing people in her bed, K.R. testified, in pertinent part, as follows:

> Well, it was a church morning, and I forgot to get my church clothes, and so I went to the door.  Tried to open the door.  The door was locked, and at that point in time my mom never locked the door.  So I didn't know, So I went to my window.  I don't know why I went to my window, but I went to my window, and I saw something.
>
> I mean, it – I – something in my bed, - I swear – I don't really know what it was but it looked like two people, and then when I got the door open, I asked my mom.  I said I saw, and then she was like you saw what? I saw two people in my bed, and I told her.  And she was like maybe it was just Christian.  He was probably just rolling – rolling over in your bed or something. And I was like, oh, okay.  So we just stopped talking.  I, like, I didn't really know what else to say.  I was kind of upset, but I got my church clothes and left.

(Doc no. 9-6, pp. 25-26.)  On cross examination, Mr. Arrington asked K.R. about her visibility from the window, including how much of the room she could see, and how much of the window was obstructed by blinds or other objects.  (Id. at  33-40.)  Mr. Arrington further questioned K.R. about her access to a house key.  (Id. at 42-43.)  Upon conclusion of K.R.'s testimony, the trial court excused K.R. to return home to West Virginia.  (Id. at 55-56.)

After K.R.'s excusal, T.B. testified that K.R. told him the morning after the incident, "[s]he thought she [had] seen someone in her room laying in her bed," and "she said it looked

like somebody was having sex in her bed." (Id. at 144-45.)  Mr. Arrington objected to this statement, but the trial court, without asking for a basis, overruled the objection noting K.R. had been present to testify earlier.  (Id. at 144.)  Mr. Jones did not raise this evidentiary issue on appeal, thus giving rise to the ineffective assistance claim in the state habeas case.

The state habeas court conducted an evidentiary hearing on August 20, 2018, reconvened on January 9, 2019, (doc. nos. 9-5; 9-6; 10-1; 10-2; 10-3), and denied relief in a final order filed on August 9, 2019, (doc. no. 9-3).  The state habeas court held (1) Mr. Jones's performance on appeal was not deficient because T.B.'s testimony concerning K.R.'s statement was admissible under Georgia law; and (2) Petitioner could not show prejudice because the challenged statement was merely cumulative of other trial evidence.  (Id. at 7.) The state habeas court found T.B.'s testimony concerning K.R.'s statement was properly admitted into evidence under Georgia evidentiary rules, including O.C.G.A. § 24-6-613(c), because (1) K.R. testified at trial and was subject to cross examination; (2) the veracity of K.R.'s testimony of seeing two people in her bed was tested at trial; (3) the statement as repeated by T.B. logically rebutted any attack on K.R.'s credibility; and (4) T.B. did not improperly bolster K.R.'s testimony because he never commented whether it was truthful.  (Id. at 7, 10-11.)  The Georgia Supreme Court denied Petitioner's certificate of probable cause to appeal ("CPC").  (Doc. no. 9-4.)

Raising in the current petition a subsection of the grounds rejected by the state habeas court, Petitioner argues appellate counsel provided ineffective assistance of counsel by not raising the trial court's allowance of T.B.'s testimony as error.  Specifically, Petitioner argues T.B.'s testimony concerning K.R.'s purported statement was inadmissible because K.R. was

excused before T.B.'s testimony and thus never available for cross examination concerning the purported statement.   Additionally, Petitioner argues the purported statement was prejudicial because it was the only evidence offered at trial of sex occurring at the house other than C.C.'s testimony.   Respondent argues federal relief should be denied because the state habeas court's decision deserves deference.   (See doc. nos. 8, 8-1.)

## II.     STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103 (2011).  Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted).

In <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result.  A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

<u>Id.</u> (internal citations omitted).  Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is wrong; "even clear error will not suffice."  <u>White v. Woodall</u>, 572 U.S. 415, 419 (2014).  Rather, the habeas petition must show the state court decision was "objectively unreasonable."  <u>Wiggins v. Smith</u>, 539 U.S. 510, 520-21 (2003); <u>see also</u> <u>Woods v. Donald</u>, 575 U.S. 312, 316 (2015) (a petitioner must show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement.").  A showing that the state court's determination was unreasonable is a substantially higher threshold than whether it was correct.  <u>Reed v. Sec'y, Fla. Dep't of Corr.</u>, 767 F.3d 1252, 1260-61 (11th Cir. 2014); <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1325 (11th Cir. 2013).  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  <u>Cullen</u>, 563 U.S. at 181.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2). Additionally, § 2254(e)(1) requires the Court "to presume the correctness of state courts' factual findings" unless the habeas petitioner rebuts that presumption "with clear and convincing evidence."   Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289 (11th Cir. 2016) (citing Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007)); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review.").   "The Supreme Court has not yet defined § 2254(d)(2)'s precise relationship to § 2254(e)(1). . . .  Whatever that precise relationship may be, a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."   Tharpe v. Warden, 834 F.3d 1323, 1336 (11th Cir. 2016) (citing Wood v. Allen, 558 U.S. 290, 301 (2010)).

## III.   DISCUSSION

### A.   Under Strickland v. Washington and AEDPA Deferential Standards, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."  Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  Strategic decisions are entitled to a "heavy measure of deference."  Strickland, 466 U.S. at 691.  Indeed, "strategic choices are

8

'virtually unchallengeable.'" <u>Provenzano v. Singletary</u>, 148 F.3d 1327, 1332 (11th Cir. 1998)

(citing <u>Strickland</u>, 466 U.S. at 690 and <u>Waters v. Thomas</u>, 46 F.3d 1506, 1522 (11th Cir. 1995)

(*en banc*)).  To show that an attorney's choice of strategy is unreasonable, a petitioner must

show that no competent counsel would have made such a choice.  <u>Strickland</u>, 466 U.S. at 690;

<u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983) (*per curiam*) ("Even if in

retrospect the strategy appears to have been wrong, the decision will be held ineffective only

if it was so patently unreasonable that no competent attorney would have chosen it." (citations

omitted)).

 "Given the strong presumption in favor of competence, the petitioner's burden of

persuasion – though the presumption is not insurmountable – is a heavy one." <u>Fugate v. Head</u>,

261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  "The test has nothing to do with what

the best lawyers would have done.  Nor is the test even what most good lawyers would have

done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances,

as defense counsel acted . . . ." <u>Ward v. Hall</u>, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing

<u>Waters</u>, 46 F.3d at 1512).

 A court, however, "need not determine whether counsel's performance was deficient

before examining the prejudice suffered by the defendant as a result of the alleged deficiencies

. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466

U.S. at 697; <u>see</u> <u>Brooks v. Comm'r, Ala. Dep't of Corr.</u>, 719 F.3d 1292, 1301 (11th Cir. 2013).

Under the prejudice prong of <u>Strickland</u>, a petitioner must show "that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

The Strickland test also applies to claims of ineffective assistance of appellate counsel, see Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), with the additional consideration that a criminal defendant has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983); see also Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (explaining appellate counsel not required to raise every non-frivolous issue).  Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'" United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citation omitted).  Moreover, it is up to appellate counsel to winnow out weaker arguments, even if they may have merit, and select the most promising issues for review. Jones, 463 U.S. at 751-52; Philmore, 575 F.3d at 1264.  Prejudice turns on

10

whether "the neglected claim would have a reasonable probability of success on appeal." Philmore, 575 F.3d at 1265 (citation omitted).

In the context of an ineffective assistance claim that was previously rejected by a state court, the petitioner bears the even heavier burden of "show[ing] that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cave v. Sec'y for Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." Bell, 535 U.S. at 699. "In short, an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Barwick v. Sec'y, Fla. Dep't of Corr., 794 F.3d 1239, 1245 (11th Cir. 2015) (internal quotations and citations omitted).

Moreover, because "[t]he standards created by Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." Richter, 562 U.S. at 105 (quotation marks and citations omitted); see also Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (review of attorney performance is "highly deferential-and doubly deferential when it is conducted through the lens of federal habeas"). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . . . [F]ederal courts are to afford both the state court and the defense attorney the benefit of the doubt." Woods v. Etherton, 578 U.S.-, 136 S. Ct. 1149, 1151 (U.S.

11

2016) (internal quotations and citations omitted).  To obtain federal habeas relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Id.  Put another way, "[t]he Strickland standard is a general one, so the range of reasonable applications is substantial." Richter, 562 U.S. at 105; see also Sexton v. Beaudreaux, 584 U.S.-, 138 S. Ct. 2555, 2560 (U.S. 2018) ("[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." (citation omitted)); Woods, 575 U.S. at 316 ("AEDPA's standard is intentionally difficult to meet.").

The purpose of the review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different. . . .  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc).  That is, Strickland requires application of a totality-of-the-circumstances standard because "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Khan v. United States, 928 F.3d 1264, 1273 (11th Cir.) (citation omitted), cert. dismissed, 140 S. Ct. 339 (U.S. Nov. 5, 2019).  As recently emphasized by the Eleventh Circuit:

> [D]eferential review under Strickland does not ask whether counsel could possibly or ideally have been more effective.  "The test for ineffectiveness is not whether counsel could have done more." We do not ask whether an attorney's representation "deviated from best practices or common custom," and we should resist the temptation to second-guess an attorney with the benefit of our

hindsight.   Rather, <u>Strickland</u> asks only "whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance."

<u>Jenkins v. Comm'r, Ala. Dep't of Corr.</u>, 963 F.3d 1248, 1269-70 (11th Cir. 2020) (internal citations omitted).

### B.      Applying AEDPA Deference, the State Court's Application of <u>Strickland</u> to Petitioner's Ineffective Assistance Claim Was Not Objectively Unreasonable to Warrant Federal Habeas Relief

The Georgia Supreme Court denied Petitioner's certificate of probable cause to appeal in a two-sentence order: "Upon consideration of the application for certificate of probable cause to appeal the denial of habeas corpus, it is ordered that it be hereby denied.  All the Justices concur, except Peterson, J., disqualified, and McMillian, J., not participating."  (Doc. no. 9-4.)  Because the denial was not accompanied by reasons, this Court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" when determining, pursuant to 28 U.S.C. § 2254(d), whether the state court decision was reasonable.  <u>Wilson v. Sellers</u>, 584 U.S.-, 138 S. Ct. 1188, 1192 (2018).  The Court is also guided by AEDPA's mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  <u>Tharpe</u>, 834 F.3d at 1336.

Thus, the Court turns its attention to the state habeas court reasoning in its decision, as it is the last state court to decide Petitioner's federal claim, in a reasoned opinion.  <u>See</u> <u>Wilson</u>, 138 S. Ct. at 1192.  As discussed below, the state habeas court correctly identified and applied

the two-part <u>Strickland</u> analysis to determine Petitioner did not show counsel's performance

was objectively unreasonable or that she was prejudiced by counsel's performance.  (<u>See</u> doc.

no. 9-3.)

> **1.    The State Habeas Court's Determination Appellate Counsel Did Not Act Objectively Unreasonable Was Not an Unreasonable Application of Federal Law**

Petitioner takes issue with the Georgia state habeas court's determination that K.R.'s

hearsay statement was admissible under Georgia evidentiary rules.  The state habeas court

explained its reasoning as follows:

> [Under Georgia's new evidence code, in effect at the time of trial O.C.G.A. § 24-6-613(c),]  "A witness' prior consistent statement is admissible only when: '(1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination.'"  <u>Dimauro v. State</u>, 341 Ga. App. 710 (2017) *citing* <u>Johnson v. The State</u>, 328 Ga. App. 702 (2014).  Therefore, prior consistent statements are admissible "if they logically rebut any attack on a witness's credibility, except for attacks upon his character for truthfulness or evidence of his prior convictions." <u>Walters v. State</u>, 225 Ga. App. 12 (2015).  In the instant case, trial counsel attacked her reasoning for walking around the house to her bedroom window by questioning her access to a house key.  Therefore, the veracity of K.R.'s testimony was placed in issue at trial, K.R. was present to testify regarding what she observed, and she was available for cross-examination.  The trial court therefore did not err in allowing T.B.'s testimony regarding K.R.'s statement and Petitioner has failed to show that appellate counsel was ineffective for failing to raise this issue on appeal.

(Doc. no. 9-3, pp. 6-7.)

Even though Petitioner's current ineffective assistance claim is one of constitutional

dimension, this Court should "defer to the state's construction of its own law" when the federal

ineffective assistance claim is based on counsel's failure to raise an issue of state law.  <u>Pinkney</u>

<u>v. Sec'y, DOC</u>, 876 F.3d 1290, 1295 (11th Cir. 2017); <u>see also</u> <u>Agan v. Vaughn</u>, 119 F.3d

1538, 1549 (11th Cir. 1997) ("[S]tate courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.").  Therefore, when considering under the current circumstances "whether there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard," <u>Pinkney</u>, 876 F.3d at 1295, the Court presumes the state habeas court knows, and correctly applied, Georgia law.  The state habeas court found T.B.'s testimony admissible under Georgia law, and counsel cannot be ineffective for failing to raise a meritless claim.  <u>See</u> <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1344 (11th Cir. 2000).

Petitioner argues T.B.'s hearsay statement was inadmissible under Georgia law because K.R. never directly testified she saw two people having sex in her bed, leaving Petitioner with no opportunity to cross examine K.R. about this specific fact.  (<u>See</u> doc. no. 1, pp. 7-8 (citing <u>Feagin v. State</u>, 731 S.E.2d 778 (Ga. App. 2012); <u>Smith v. State</u>, 321 S.E.2d (Ga. App. 1984); <u>Hall v. Lewis</u>, 692 S.E.2d 580 (Ga. 2010)).  Not only does Petitioner ask this Court to second-guess the state habeas court's ruling on this purely state law evidentiary issue, which the Court cannot do, but she also bases her argument on a faulty and overly narrow reading of K.R.'s testimony.  The clear and obvious implication from K.R.'s trial testimony is that she saw her mother in her bedroom having sex with another person, and not surprisingly, Petitioner's trial counsel wisely conducted a thorough and sifting cross examination of K.R. concerning whether she actually saw what she implied.  The state habeas court properly found Petitioner had a fair opportunity to question K.R. concerning this very issue, and Petitioner's argument fails to sufficiently undermine such finding as to distort the presumption the state habeas court knew and correctly applied Georgia law.

> **2.     The State Habeas Court's Determination Petitioner Suffered No
> Prejudice Was Not an Unreasonable Application of Federal Law**

The state habeas court also found the absence of any prejudice because "T.B.'s testimony regarding K.R.'s prior statement that she observed two people having sex in her bed was cumulative to the weight of the testimony produced at trial and the available evidence." Petitioner argues this statement was pivotal at trial, and without it the jury would have probably found Petitioner not guilty, because it was the only evidence offered at trial of sex occurring at the house other than C.C.'s testimony.  Even without this hearsay statement, however, K.R. testified she saw two people in her bed, which corroborated C.C.'s testimony that he and Petitioner had sex in K.R.'s bed after they had sex in the camper.  Removing T.B.'s hearsay statement thus does not materially change the evidence, and the state habeas court was correct in its finding of no reasonable probability that, but for admission of the hearsay statement, the result of the proceeding would have been different.  Further supporting the state habeas court's decision, the Georgia Court of Appeals found "[C.C.'s] testimony was sufficient to establish claims of child molestation and aggravated child molestation."  See Adams, 795 S.E.2d at 333 (citing Frankmann v. State, 655 S.E.2d 272, 273 (Ga. Ct. App. 2006) (finding victim testimony alone sufficient to establish offenses of child molestation)).

In sum, Petitioner cannot satisfy the two-part test of Strickland. Therefore, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.  This claim provides no basis for federal habeas corpus relief.

**IV.    CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 26th day of March, 2021, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

17